# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| CATAPULT IP INNOVATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MALIKIE INNOVATIONS LIMITED, <br><br> Defendant. | Index No. _____ <br><br> **ORIGINAL COMPLAINT** |

Plaintiff Catapult IP Innovations, Inc. ("Catapult"), by and through its undersigned counsel, brings this complaint against Defendant Malikie Innovations Limited, seeking an order compelling Malikie to participate in arbitration to resolve disputed ownership over U.S. patents.

## INTRODUCTION

1. This lawsuit is made necessary because of a breach of contract by non-party BlackBerry, Limited—a former manufacturer of the personal digital assistant of the same name. BlackBerry entered into a contract to sell most of BlackBerry's extensive patent portfolio, including more than 9,000 United States patents and patent applications, to Plaintiff Catapult. BlackBerry then breached that contract in March of this year, and then purported to assign the patents and applications to Defendant Malikie instead. Catapult is currently arbitrating its claims against BlackBerry. In that arbitration, Catapult seeks an order of specific performance from the Arbitral Tribunal, compelling BlackBerry to unwind its recent transaction with Malikie.

2. In this action, Plaintiff respectfully seeks an order from this Court compelling Malikie to submit to the jurisdiction of the arbitral tribunal. Such an order is appropriate both because Malikie agreed in writing to arbitrate "any dispute . . . relating to" its agreement to buy the patents from BlackBerry, and because Malikie is equitably estopped from refusing to

1

participate in the arbitration. Solely in the alternative, Plaintiff Catapult respectfully requests that this Court, following an award by the Arbitral Tribunal directing BlackBerry to unwind its sale of the patents to Malikie, issue an injunction requiring Malikie to participate in that unwinding by re-conveying the patents to BlackBerry after BlackBerry returns of the purchase price.

## PARTIES

3.       Plaintiff Catapult IP Innovations, Inc. ("Catapult"), is a corporation organized and existing under the laws of Delaware with its principal place of business at 301 South Freemont Avenue, Baltimore, Maryland 21230.

4.       Defendant Malikie Innovations Limited ("Malikie") is a legal entity organized and existing under the laws of Ireland with its principal place of business at The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin, Ireland, A96 VR66.

## VENUE AND JURISDICTION

5.       Section 293 of Title 35 of the United States Code provides that this District has personal jurisdiction over a "patentee not residing in the United States," in a lawsuit "respecting the patent or rights thereunder," provided that the patentee has not filed a written designation, with the Patent and Trademark Office, designating a person residing in the United States to accept service of process.

6.       This is a lawsuit "respecting" the patents and patent applications listed in Exhibit A and the "rights thereunder." *Nat'l Pat. Dev. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1010 (D.C. Cir. 1989) (en banc) (any lawsuit "over patent ownership" is within the scope of Section 293).

7.       This Court has personal jurisdiction over Malikie, and venue is appropriate as to Malikie, under 35 U.S.C. § 293.

      a.       Malikie does not reside in the United States.

  b. On information and belief, BlackBerry has executed assignment documents that purport to assign the United States patents and patent applications, listed in Exhibit A to this Complaint, to Malikie. Malikie is therefore a purported successor in title to the United States patents listed in Exhibit A, and is thus deemed a "patentee" for purposes of Section 293. *See* 35 U.S.C. § 100(d) (defining "patentee").

  c. Neither BlackBerry nor Malikie has filed a written designation, with the Patent and Trademark Office, designating a person residing in the United States to accept process with regard to the patents listed in Exhibit A.

  8. This Court has subject-matter jurisdiction under the diversity statute, 28 U.S.C. § 1332(a)(2).

  a. Catapult is a resident, for purposes of diversity jurisdiction, of Delaware and Maryland.

  b. Malikie is a citizen or subject of a foreign state.

  c. The amount in controversy is measured by the value of the patents listed in Exhibit A. Those patents' value vastly exceeds $75,000.

## FACTUAL ALLEGATIONS

**I. BlackBerry Makes, and then Breaks, a Deal with Catapult**

  9. Catapult is in the business of monetizing intellectual property. It was formed to acquire substantially all of BlackBerry's non-core portfolio of legacy intellectual property. The transaction at issue involved Catapult purchasing over 35,000 issued and pending patents (including U.S. and foreign patents) related to BlackBerry's messaging, cybersecurity, telecommunications, and wireless networking technologies. In terms of the number of inventions and patent assets, it was to be one of the largest patent portfolios ever sold.

  10. BlackBerry and Catapult signed a Patent Sale Agreement ("Catapult PSA") on

or about January 29, 2022. The Catapult PSA is Exhibit B to this Complaint.

11. In the PSA, BlackBerry contracted to sell more than 9,000 United States patents and patent applications to Catapult. These are listed in Exhibit A to this Complaint.[1]

12. The Catapult PSA provided for Catapult to acquire BlackBerry's extensive intellectual property portfolio. Under the original terms of the PSA, Catapult was to pay BlackBerry consideration of $600 million, with $450 million as a "Closing Payment" due at closing and $150 million of "Deferred Compensation" via promissory notes.

13. Section 10.8 of the Catapult PSA provides for arbitration of "any dispute, controversy, or claim arising from or relating to this Agreement or the validity, interpretation, breach, or termination thereof (each, a 'Dispute'), including the determination of the scope or applicability of this agreement to arbitrate," before an Arbitral Panel to be convened in New York, NY, to be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures.

14. The Catapult PSA was amended by the parties on several occasions.

15. These amendments did not alter the arbitration provision, Section 10.8.

16. The closing of the transaction was scheduled for Tuesday, March 14, 2023.

17. Catapult was ready to close the transaction on March 14, 2023.

18. On Monday, March 13, 2023, BlackBerry informed Catapult that BlackBerry

---

[1] Exhibit A specifically identifies, by number, all of the assets whose sale was publicly disclosed by BlackBerry in its January 2022 SEC filing. Exhibit A also refers generally and by category to two additional groups of U.S. patent assets that BlackBerry agreed to sell to Catapult. The specific assets in these two additional groups are not (yet) identified by number in Exhibit A because they have not been publicly disclosed. Those two groups are: (a) approximately 500 U.S. patents and applications that were listed on Exhibit B-2 of the Catapult PSA; and (b) additional changes to the asset list that have occured since January 2022 as a result of continuing "provisional applications, reissues, reexaminations, renewals, extensions, continuations, continuations in part, substitutions, divisionals, foreign or international counterparts and other applications, worldwide, with respect to any patents and patent applications listed on Exhibit A." *See* Catapult PSA (definition of "Assigned Patents").

would not close the transaction.

19. On March 20, 2023, BlackBerry wrongfully terminated the Catapult PSA.

20. On April 6, 2023, Catapult commenced an arbitration against BlackBerry, pursuant to the arbitration provisions of the Catapult PSA, seeking relief for BlackBerry's breach of the PSA. In this arbitration, Catapult seeks (among other relief) specific performance, namely, an order requiring BlackBerry to unwind its later transaction with Defendant Malikie, and to instead assign the patents to Catapult on the terms agreed to in the Catapult PSA.

21. That arbitration remains pending. An Arbitral Panel of three arbitrators has been assigned by JAMS. The parties have exchanged pleadings. No date for a hearing has been set by the Arbitral Panel, and no judgment has been entered.

## II. BlackBerry Attempts to Sell the Patents to Malikie Instead of Catapult

22. Malikie is a wholly-owned subsidiary of Key Patent Innovations Ltd., a company that advertises itself as an "IP monetisation company based in Dublin, Ireland."[2]

23. On information and belief, Malikie was created by Key Patent Innovations in 2022 as a vehicle for the purpose of acquiring the BlackBerry patents that Catapult had contracted to buy.

24. At all relevant times, Malikie and Key Patent Innovations were aware of the Catapult PSA, which had been publicly disclosed by BlackBerry in press releases and in SEC filings.[3]

25. At all relevant times, Malikie and Key Patent Innovations knew that the Catapult PSA was a binding contract.

---

[2] https://www.keypatentinnovations.ie/.
[3] *See, e.g.*, BlackBerry Press Release, *BlackBerry Agrees to Sell Legacy Patents for $600M*, Jan. 31, 2022, available at https://www.blackberry.com/us/en/company/newsroom/press-releases/2022/blackberry-agrees-to-sell-legacy-patents-for-600m.

26. Despite knowing of the Catapult PSA, Malikie in 2022 (if not earlier) began efforts to induce BlackBerry to breach the Catapult PSA and to instead sell the patents to Malikie.

27. In an earnings call with investors in December 2022, BlackBerry's CEO stated that even though BlackBerry was "negotiating the final documents" with Catapult, a "second party" (meaning Malikie) had "completed their due diligence, and term sheets discussions are well advanced."[4]

28. On March 20, 2023—the same day that BlackBerry wrongfully terminated the Catapult PSA—BlackBerry also signed a *different* Patent Sale Agreement with Malikie (the "Malikie PSA"). The Malikie PSA is Exhibit C to this Complaint.

29. The Malikie PSA purported to require BlackBerry to assign the U.S. patents, listed in Exhibit A to this Complaint, to Malikie.

30. In exchange for those patents and other foreign patents, Malikie agreed to pay $170 million immediately, plus $30 million three years later, plus annual cash royalties from the profits Malikie generated from the patents.

31. Malikie knew, when it signed the Malikie PSA, that Catapult already had a valid and binding PSA to purchase the same patents.

32. The Malikie PSA required BlackBerry to disclose, to Malikie, the existence of Catapult's arbitration with BlackBerry, including Catapult's request for specific performance. In Article VI of the Malikie PSA, BlackBerry agreed to inform Malikie of actions, including litigation or arbitration, that might affect the "legality, validity or enforceability" of the Malikie

---

[4] https://www.fool.com/earnings/call-transcripts/2022/12/21/blackberry-bb-q3-2023-earnings-call-transcript/

PSA or that might "materially delay or materially impair the consummation of the transactions contemplated hereby," as well as any encumbrances on BlackBerry's title or ability to transfer title to the patents. *See, e.g.*, Malikie PSA ¶¶ 6.5, 6.6, 6.8, 6.12, 6.15.

33. On information and belief, BlackBerry abided by its obligations under the Malikie PSA and promptly disclosed, to Malikie, the existence of the Catapult arbitration and the claims Catapult made, and the relief Catapult sought, in that arbitration.

34. Section 10.8 of the Malikie PSA, just like Section 10.8 of the *Catapult* PSA, provides for arbitration. In Section 10.8 of the Malikie PSA, Malikie agreed to arbitrate "any dispute, controversy, or claim arising from or relating to this Agreement or the validity, interpretation, breach, or termination thereof (each, a "Dispute"), including the determination of the scope or applicability of this agreement to arbitrate," before a panel of three arbitrators in New York, NY, which arbitration shall be "administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures."  Malikie PSA, § 10.8(a).

35. Malikie also agreed, in the Malikie PSA, that "the agreement to arbitrate Disputes set forth in this Section 10.8 will be interpreted and applied broadly such that all reasonable doubts as to arbitrability of a Dispute will be decided in favor of arbitration." *Id.* § 10.8(j).

36. Malikie also agreed, in the Malikie PSA, that "any arbitration under this Section 10.8 may be consolidated with any other arbitration arising under any other Transaction Document having common issues of fact or law pursuant to JAMS Rule 6(e)." *Id.* § 10.8(m). The term "Transaction Document" is defined on page 13 of the Malikie PSA to include any "Transfer Document," which term is in turn defined, on the same page, to include "the fully executed patent transfer documents," i.e., the written assignments.

7

37. The Malikie PSA also stipulates the exact language to be used in the Transfer Documents that BlackBerry agreed to sign, purporting to assign the patents to Malikie. *Id.* at Ex. F-1.

38. According to Exhibit F-1 of the Malikie PSA, BlackBerry's assignment documents, purporting to assign the patents to Malikie, stated that the assignments were "subject to all the terms and conditions of the [Malikie] PSA. . . . To the extent that there are any discrepancies between this assignment and the PSA, the applicable terms and provisions of the PSA shall govern." *Id.*

39. On May 11, 2023, Malikie's parent company, Key Patent Innovations Limited, issued a press release stating that Malikie had "completed the acquisition" of "approximately 32,000 patents and patent applications" from BlackBerry.[5]

40. On information and belief, BlackBerry has executed patent assignment documents that purport to assign ownership rights, in the U.S. patents and patent applications listed in Exhibit A, to Malikie. On information and belief, these assignment documents contain the required language, quoted above, that is set forth in Exhibit F-1 to the Malikie PSA.

### III. Catapult Moves the Arbitral Panel to Join Malikie to the Current Arbitration as an Indispensable Party

41. Concurrent with the filing of this complaint, Catapult has sought leave from the Arbitral Tribunal to file an amended pleading, adding Malikie as an indispensable party to that arbitration.

42. In its amended pleading, Catapult explains that Malikie is an indispensable party

---

[5] Key Patent Innovations, Ltd., Press Release, Key Patent Innovations Announces Closing of Previously Announced Acquisition of Significant Patent Portfolio from BlackBerry (May 11, 2023), https://www.prnewswire.com/news-releases/key-patent-innovations-announces-closing-of-previously-announced-acquisition-of-significant-patent-portfolio-from-blackberry-301822605.html.

to the arbitration.

43. Malikie is an indispensable party to the arbitration for two reasons. First, its presence is necessary to accord complete relief to Catapult, which relief includes specific performance of the Catapult PSA, the unwinding of the BlackBerry-Malikie transaction, and the transfer of the patents to Catapult. Second, Malikie's presence in the arbitration is necessary in order for Malikie to have an opportunity to be heard.

44. In its amended pleading, Catapult also contends that the Arbitral Tribunal has jurisdiction over Malikie because (a) the dispute comes within the scope of Malikie's written agreement to arbitrate; and (b) because Malikie is equitably estopped from disputing the Arbitral Tribunal's jurisdiction over it.

45. The Arbitral Tribunal has not yet ruled on Catapult's motion for leave to file an amended pleading.

## CLAIMS FOR RELIEF

**I.     First Cause of Action: Order Compelling Arbitration (Federal Arbitration Act, 9 U.S.C. § 4)**

46. Plaintiff incorporates by reference the allegations in the previous paragraphs as if fully set forth herein.

47. In the Malikie PSA, Malikie agreed to arbitrate "*any* dispute, controversy, or claim arising from or relating to this Agreement or the validity ... thereof."

48. In the current arbitration, Catapult contends:

   a. That Malikie was not an innocent or *bona fide* purchaser for value.

   b. That the Malikie PSA is not valid.

   c. That BlackBerry's assignment documents, purporting to assign the patents to Malikie, are not valid.

        d.        That the Arbitral Tribunal should award specific performance, including an order to unwind the BlackBerry-Malikie transaction and to convey the patents to Catapult instead.

49. The current arbitration is a "dispute ... relating to" the Malikie PSA and its "validity."

50. It is for the arbitrators, not this Court, to hear and resolve any objection, by Malikie, that its participation in the current arbitration is not within the scope of Malikie's agreement to arbitrate. Malikie expressly agreed that the Arbitral Tribunal, and not a court, would make all "determination[s]" about "the scope or applicability of this agreement to arbitrate."

51. Solely in the alternative, Malikie is equitably estopped from challenging the jurisdiction of the Arbitral Tribunal over it.

52. Malikie is currently asserting its ownership rights over the patents and patent applications listed in Exhibit A, as a result of BlackBerry's assignment documents purporting to assign them to Malikie.

53. Those assignment documents arise out of, are based upon, and expressly incorporate all the provisions of the Malikie PSA.

54. Equity forbids Malikie from claiming the benefit of the Malikie PSA (i.e., its claimed ownership rights to the patents) while at the same denying the applicability of the Malikie PSA's arbitration provision.

55. Wherefore, Catapult respectfully seeks an order from this Court compelling Malikie to participate in the current arbitration as a party and to submit to the jurisdiction of the current Arbitral Tribunal.

### II.     Second Cause of Action: Injunctive Relief

56.     Plaintiff incorporates by reference the allegations in the previous paragraphs as if fully set forth herein.

57.     This Second Cause of Action is asserted solely in the alternative, in the event that the Court does not compel arbitration as requested in the First Cause of Action.

58.     Malikie is not a *bona fide* purchaser for value of the patents listed in Exhibit A. *See* 35 U.S.C. § 261.

59.     In equity, Malikie should not be permitted to retain ownership of the patents that it acquired in derogation of Catapult's superior and prior rights under the Catapult PSA.

60.     Wherefore, following an award of the Arbitral Tribunal ordering specific performance by BlackBerry, this Court should issue an injunction compelling Malikie to unwind the Malikie PSA transaction, by reconveying the patents to BlackBerry in exchange for BlackBerry returning the purchase price paid by Malikie.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A.     Enter an injunction compelling Defendant to participate as a party in the current arbitration between Catapult and BlackBerry;

B.     In the alternative, enter an injunction ordering Malikie to reconvey the patents to BlackBerry in exchange for BlackBerry returning the purchase price to Malikie; and

C.     Award Plaintiff any and all additional legal or equitable relief to which it may be entitled and this Court deems just and proper.

Dated: June 2, 2023

Respectfully submitted:

By: /s/Alexander P. Faig

Alexander P. Faig
Virginia Bar No. 96248
Law Office of Samuel C. Moore, PLLC
526 King St., Suite 506
Alexandria, Virginia 22314
Email: afaig@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234

Amir Alavi (*pro hac vice to be filed*)
aalavi@aatriallaw.com
Demetrios Anaipakos (*pro hac vice to be filed*)
danaipakos@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
3417 Mercer Street, Suite C
Houston, Texas 77027
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Geoffrey Harrison (*pro hac vice to be filed*)
gharrison@susmangodfrey.com
SUSMAN GODFREY, LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Mark Musico (*pro hac vice to be filed*)
mmusico@susmangodfrey.com
Steven Shepard (*pro hac vice to be filed*)
sshepard@susmangodfrey.com
SUSMAN GODFREY, LLP
1301 Ave of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

*Counsel to Plaintiff*